UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**UNITED STATES OF AMERICA,**

                    Plaintiff,

                                        **MAGISTRATE JUDGE KIMBERLY ALTMAN**

        v.
                                        **No. 21-20354**

**D-24 BRANDON THOMAS,**

                    Defendant.
_____/


**ARRAIGNMENT AND DETENTION HEARING**
(Conducted Via Zoom Videoconferencing Software)
**Wednesday, June 9, 2021**


Appearances:

Danielle Asher                     Judith S. Gracey
U.S. Attorney's Office             The Gracey Law Firm
211 W. Fort Street, #2300          2200 Beechmont Street
Detroit, Michigan  48226           Keego Harbor, MI 48320
(313) 226-9100                     (248) 221-7726
  On behalf of Plaintiff             On behalf of Defendant


                    -    -    -


*To obtain a certified transcript, contact:*
*Sheri K. Ward, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard*
*Detroit, Michigan  48226*
*(313)234-2604 · ward@transcriptorders.com*

*Transcript produced using machine shorthand and CAT software.*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

**I N D E X**

Proceedings                                                    Page

Arraignment ......................................4

Detention Hearing ................................5

  Proffer by Ms. Asher  .........................5

  Argument by Ms. Asher  .......................18

  Argument by Ms. Gracey  ......................23

  Ruling of the Court .........................30

Certification of Reporter ......................38

- - -

**E X H I B I T S**

   Number        Description              Id'd Rcvd Vol.

***None Marked, Offered or Received***

- - -

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

*Page 3*

1       Detroit, Michigan

2       Wednesday, June 9, 2021

3       11:17 a.m.

4              -   -   -

5   (Call to Order of the Court.)

6       **THE CLERK:**  Calling Case Number 21-20354,

7  United States v. Brendon Thomas.

8      Counsel, please state your name for the record.

9       **MS. ASHER:**  Good morning, Your Honor.  Danielle Asher

10  on behalf of the United States.

11       **MS. GRACEY:**  Good morning, Your Honor.  For the

12  record, Judy Gracey on behalf of Mr. Thomas, who is

13  participating by Zoom video via the Livingston County Jail with

14  no objection.

15       **THE COURT:**  Okay.  Thank you.  Good afternoon.

16      Good afternoon, Mr. Thomas.  Can you please state your

17  name for the record.

18       **THE DEFENDANT:**  Brandon Lamar Thomas.  Good

19  afternoon, Your Honor.

20       **THE COURT:**  Okay.  And before we get started, as your

21  lawyer just explained, ordinarily you would have a right to an

22  in-person hearing in court, but the court is closed so we're

23  doing the proceedings over Zoom, and you agree to have your

24  hearings over Zoom today?

25       **THE DEFENDANT:**  Yes, Your Honor.

*21-20354; U.S.A. v. D-24 Brandon Thomas*

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | **THE COURT:**  Okay.  Thank you.  Well, the reason you                   |
| 2  | are here today is to be arraigned on the indictment and for a            |
| 3  | detention hearing, and, as to the arraignment, have you had an           |
| 4  | opportunity to go over the charges and maximum penalties with            |
| 5  | your lawyer?                                                              |
| 6  | **THE DEFENDANT:**  Yes, Your Honor.                                      |
| 7  | **THE COURT:**  Okay.  I'm going to go over them as well.                 |
| 8  | You are charged in Count 1, RICO conspiracy.  It's a                     |
| 9  | violation of 18 U.S.C. Section 1962, for which if you are                |
| 10 | convicted or plead guilty you could be sentenced to a term of            |
| 11 | up to life imprisonment, a $250,000 fine, and up to five years          |
| 12 | of supervised release.                                                   |
| 13 | You are also charged in Count 4, Conspiracy to Distribute               |
| 14 | Controlled Substances, in violation of 21 U.S.C. Section 846            |
| 15 | and 841, for which you could be sentenced to a term of at least         |
| 16 | ten years and up to life imprisonment, a $10 million fine, and          |
| 17 | at least five years of supervised release.  There is also an            |
| 18 | enhanced penalty notice, and I do have in front of me an                 |
| 19 | Acknowledgment of the Indictment that appears to be signed by           |
| 20 | you and by your counsel.  Is that correct?                               |
| 21 | **THE DEFENDANT:**  That's right.                                        |
| 22 | **THE COURT:**  Okay.  Counsel, are you prepared to enter                |
| 23 | a plea on behalf of your client at this time?                            |
| 24 | **MS. GRACEY:**  I am, Your Honor.  At this time we waive                |
| 25 | any further formal reading.  My client will stand mute, and we          |

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

1  ask that the Court enter a plea of not guilty on his behalf on

2  both charges.

3          **THE COURT:**  I will enter a plea of not guilty on his

4  behalf, and the record will reflect that he has been arraigned

5  on the indictment.

6      Ms. Asher, is the detention hearing still going?

7          **MS. ASHER:**  Yes, Your Honor.

8          **THE COURT:**  Okay.  You may proceed when ready.

9          **MS. ASHER:**  Thank you, Your Honor.

10     As Your Honor just noted, Mr. Thomas is charged in

11  Count 1, the RICO conspiracy, as well as Count 4, a

12  drug-trafficking conspiracy.  Count 4 carries a mandatory

13  minimum ten years if convicted, and there is also a presumption

14  of detention for this count.  The government is moving both on

15  nonappearance grounds as well as dangerousness.

16     Mr. Thomas is named in ten overt acts in the indictment.

17  The majority of those are a crime within the last few months.

18  He's named in Overt Act 53, which is on Page 47; Overt Act 179,

19  which is on Page 87; Overt Acts 233 and 234 on Page 101; Overt

20  Act 240 on Page 103; Overt Acts 246 and 247 on Page 105; Overt

21  Act 249 on Page 106; Overt Act 261 on Page 110; and Overt Act

22  270 on Page 112.  And I will encompass a majority of this

23  during my proffer as well.

24     As Your Honor is aware, we filed a written proffer about

25  the Almighty Vice Lord Nation, and I just want to highlight a

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

*Page 6*

1   few facts as those relate specifically to Mr. Thomas.

2   As Your Honor is aware, the Almighty Vice Lord Nation is a

3   highly organized violent gang with a chain of command and

4   strict by-laws.  Vice Lord leaders, like Defendant Number 1,

5   Kevin Fordham, issue Key 21 kill orders, where members are

6   required to carry out these orders to kill members suspected of

7   cooperating with law enforcement or rival gang members.

8   They also issue orders to assault Vice Lord members who

9   are in violation of these strict by-laws, and members like

10  Brandon Thomas must immediately follow these orders from these

11  higher ranked leaders like someone who is Kevin Fordham.

12  Your Honor is also aware of the power struggles that are

13  currently going on in the Vice Lord leadership.  Based on Vice

14  Lord literature, treason requires punishment by either a life

15  of misery or death.

16  Your Honor is aware that there are plans with the Mafia

17  Insane and Traveling Vice Lords to overthrow Vice Lord

18  leadership, including the Prince -- IVL Prince Kevin Fordham,

19  Defendant 1, and during that conversation Mr. Thomas is also

20  specifically mentioned as one of the people who needs to be

21  taken out first because he's someone that they would need to

22  worry about because he is a high-ranking member under

23  Kevin Fordham.

24  There are significant concerns for violent retaliation

25  based on this plot by Vice Lord members, particularly like

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 7

 1 | someone who is Brandon Thomas, who is named and specifically
 2 | listed as part of this plot, and who also has a high-ranking
 3 | role, who is expected to carry out violence on behalf of the
 4 | gang.
 5 | He is a Chief Enforcer, and he is Kevin Fordham's chief
 6 | enforcer, Defendant Number 1. And I'll explain further that
 7 | he's the person that Kevin Fordham turns to when he needs
 8 | murders or he needs physical beatings for Vice Lord members who
 9 | are in violation of Vice Lord law.
10 | Additionally, Vice Lord members like Brandon Thomas sell
11 | drugs. They utilize an expansive Vice Lord drug-trafficking
12 | network. Vice Lord members like Brandon Thomas are involved in
13 | selling fentanyl and heroin.
14 | **THE COURT:** Excuse me, Ms. Asher. I just want to
15 | briefly interrupt you.
16 | Mr. Thomas, this is the government's turn to make its
17 | proffer and its argument, and your lawyer will have an
18 | opportunity to rebut that on your behalf -- okay -- so you
19 | don't need to raise your hand or anything. It's just a time to
20 | listen; okay? Okay?
21 | All right. You may proceed, Ms. Asher.
22 | **MS. ASHER:** Thank you, Your Honor.
23 | As I was explaining, Vice Lord members like Brandon Thomas
24 | enjoy connections to drug suppliers and they also utilize an
25 | interstate drug network to further drug trafficking on behalf

*21-20354; U.S.A. v. D-24 Brandon Thomas*

1    of the gang.  They are also involved in armed drug trafficking.

2    Your Honor, I would also proffer several things from the

3    Pretrial Services Report, but, just as an initial matter,

4    respectfully the government believes that the Pretrial Services

5    report is lacking significant relevant information that the

6    Court should consider in determining whether Mr. Thomas poses a

7    nonappearance risk or a danger to the community if released on

8    bond, and we believe that this highlights his inability to be

9    successfully monitored by Pretrial Services if he is released.

10   Additionally, we would note the report has no mention of

11   Mr. Thomas' gang ties.

12   As far as the residence that Mr. Thomas provided, he

13   provided 20576 Vaughan, which is one of the locations where ATF

14   agents executed a search warrant at and where Mr. Thomas was

15   arrested on June 3rd, and I'll explain some details about that

16   later, but I would note that both Mr. Thomas and his girl

17   friend told Pretrial Services that they had been living at that

18   address for the past year and then Pretrial Services was unable

19   to verify where he had lived before that.  He said he lived on

20   and off on Prest for a year and on Santa Clara for five years

21   in Detroit, but, again, he was not truthful to Pretrial

22   Services about this.  He never admitted to staying at a

23   second location off Brady in Redford, Michigan.

24   Upon his arrest, Brandon Thomas told ATF that he was

25   staying both on Vaughan and on Brady.  He explained that his

1  baby mama lived on Vaughan, but he also stayed at Brady, and

2  this is a location where his nephew lives, and he also provided

3  another location for his wife on Pierson.

4      ATF obtained a ping warrant on Mr. Thomas' phones, and it

5  showed that he splits his time evenly.  During the month of May

6  at least he's splitting his time evenly between that Vaughan

7  residence and Brady residence.

8      He also was traveling out of town on May 16th, 2021 -- out

9  of state, I'm sorry, on May 16th, 2021, and his ping data

10  showed up until the time of his arrest on June 3rd he was

11  evenly splitting his time and spending the night at both the

12  Brady residence, which I'll talk about later where ATF also

13  executed a search warrant, and the Vaughan residence that he

14  provided to Pretrial Services and that his girl friend also

15  confirmed with Pretrial Services.

16      He was at the Brady residence the day before the search

17  warrant, and he spent the night at Vaughan the day of the

18  search warrant.  So, again, he was not truthful to Pretrial

19  Services and neither was his girl friend when they were

20  explaining where his residence is, and he is requesting to be

21  released to that Vaughan address.

22      Additionally, Your Honor, his employment history, he says

23  that he is, quote-unquote, a "self-employed security guard."

24  And that is actually -- would be consistent with his role as a

25  Chief Enforcer for this gang, which would explain some of the

 1   different violent activities that he was involved in, both for

 2   the IVL, and he's also a member of the Phantom Motorcycle Club,

 3   which I will talk about in a moment.

 4        Pretrial Services notes his mental health history.  He was

 5   hospitalized five years ago for hearing voices and is currently

 6   taking Risperdal, which is a medication for a mood disorder,

 7   and Seroquel, which is a psychotropic medication for

 8   schizophrenia.

 9        Mr. Thomas has over a decade of repeatedly failing to

10   appear with outstanding warrants.  He has ten active warrants

11   based on the Pretrial Services Report.  Nine of those are for

12   failing to appear, starting in 2009 and as recently as 2020,

13   November of 2020, a criminal bench warrant for failure to

14   appear.

15        He also has several arrests.  He has a misdemeanor weapons

16   conviction from 2006, but he does have several other arrests,

17   including a 2013 arrest for felony CSC, unlawful imprisonment,

18   assault with intent to commit great broadly harm, and assault

19   with a dangerous weapon.  Based on the police report for that

20   incident, the victim explained that Mr. Thomas thought that the

21   victim had molested a child.  The victim said that Mr. Thomas

22   threatened him with a steak knife and shoved a metal broom up

23   his rectum.  He also took gardening sheers and threatened to

24   cut off the victim's genitals.  But, again, there was never a

25   conviction.  That case was dismissed.

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 11

1   Pretrial Services notes that the defendant has numerous

2   outstanding warrants for failure to appear and ties to out of

3   the state, and we disagree that there are conditions that would

4   be in place that would be able to reasonably assure his

5   appearance as required.

6       Additionally, Your Honor, we believe for the Pretrial

7   Services recommendation for release based on the danger to the

8   community it's lacking, most notably, his gang affiliation but

9   also any relation to drug trafficking, which we'll explain in a

10  moment, as well as his involvement in ongoing shootings and

11  discussions about murder and his involvement in extortion.

12      Turning to Mr. Thomas' role within the Almighty Vice Lord

13  Nation, Mr. Thomas is the Chief Enforcer for the entire Insane

14  Vice Lord branch.  He is also the National President for the

15  Phantom's Motorcycle Club.  This is a group that's affiliated

16  with the Vice Lords, and it's also been recognized as a

17  criminal enterprise in a previous federal RICO case, *United*

18  *States v. Nicholson*.

19      Mr. Thomas himself admitted in April of 2021 that he is

20  the Chief Enforcer over the Nation right underneath P.  P is an

21  unindicted coconspirator.  And the way that the ranking system

22  goes is Defendant 1, Kevin Fordham; Number 2 is P; and Number 3

23  would be Mr. Thomas, the Chief Enforcer, the third highest rank

24  within the Insane Vice Lords.  Under Vice Lord literature Chief

25  Enforcers are expected to handle discipline, enforce all

*21-20354; U.S.A. v. D-24 Brandon Thomas*

1  commands sent down to him from Vice Lord leaders, and this

2  includes acts of violence, like assaults for members who are in

3  violation and murder.

4      He is involved in extortion with Vice Lords and Phantom's

5  Motorcycle members.  In 2018 he attempted to extort K.M. for

6  both $2,000 and his motorcycle.  He sent threatening text

7  messages to K.M., arrived at the victim's home, threatened to

8  kill the victim and his family, and said he had a gun in the

9  back of the truck, and this was all because Mr. Thomas was told

10 by another Vice Lord and Phantom Motorcycle Club member that he

11 thought the victim was having an affair with his wife -- with

12 the other member's wife, not Mr. Thomas's wife.

13     Additionally, the vehicle that was involved in that

14 confrontation was registered to Boss Hogg Protection, and

15 Boss Hogg is Mr. Thomas' gang alias.

16     As Vice Lords they are required to carry out violent acts,

17 and he is also likely to possess firearms both in his person

18 and in his residence, and during a federal search warrant on

19 both of his residences ATF found firearms at both locations,

20 and I'll discuss the other items found in detail in a moment.

21     Additionally, during a three-month period between February

22 of 2021 and April of 2021 there were numerous calls intercepted

23 between Mr. Thomas and IVL Prince Defendant 1, Kevin Fordham.

24 One of those calls was discussing a plot to murder a Vice Lord

25 member known as Lil Ugly.

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 13

1    During a call on March 13th, 2021, Brandon Thomas was

2    talking to Kevin Fordham about an IVL member's request to have

3    this individual murdered.  During the call Thomas is telling

4    Kevin Fordham that he thinks they don't have the full

5    information, but then he tells Kevin Fordham that he would,

6    quote, "ride" for Fordham because Fordham is a Vice Lord and he

7    says he does not have a problem handling the situation.

8    So if Kevin Fordham wants him to kill this guy even though

9    he doesn't think he has the full information, he's telling

10   Kevin Fordham, "I'm willing to do it.  I'm willing to handle

11   the situation."  And during this conversation he's using a

12   cavalier tone, like he's having any other normal conversation

13   talking about the weather, talking about what's going on,

14   instead here he's talking about killing someone.

15   There is, additionally, another call from April of 2021

16   where Brandon Thomas, it shows, is in charge of both carrying

17   out and overseeing these physical violations of Vice Lord

18   members who are in violation of Vice Lords law again at the

19   direction of Kevin Fordham.  During this call on April 30th

20   with Kevin Fordham, Kevin Fordham is telling Thomas that "you

21   the Chief Enforcer," and he's telling Brandon Thomas that he's

22   not needed to go to this meeting unless there is going to be

23   something that needs to be handled, referring to a violation

24   for a Vice Lord member.

25   Thomas then asks Fordham, "Oh, you don't think it's going

*21-20354; U.S.A. v. D-24 Brandon Thomas*

1  to be a violation today, bro?"

2      Fordham then said, if there are going to be violations

3  handed out, then he explained that sisters who are female Vice

4  Lord members, they violate each other and so Thomas does not

5  need to handle it.

6      Thomas then responded that he'll handle it and asked

7  Kevin Fordham what's the issue.

8      Kevin Fordham said that's not the way that violations

9  should be handled and that Thomas wasn't listening to him.  He

10  tells Thomas that for the sisters he should read the charges,

11  which are the violations -- alleged violations against them,

12  and if they are not right, then he won't violate them, but if

13  the charges are right against these Vice Lord members,

14  Kevin Fordham tells Thomas to, quote, "do what you do."

15      Thomas then responds, "You act like you don't know what

16  I'm doing yet."

17      Fordham responds, "I didn't say you didn't.  I know you

18  do.  That's why you're in the position."

19      And Thomas responds, "Right.  Ima take care of it, bro."

20      This shows that, again, Kevin Fordham is giving him the

21  direction.  He's telling him to oversee this trial, oversee

22  whether these charges for these alleged violations of these

23  members are true, and then if they are he's responsible for

24  carrying out and making sure that violation happens.

25      Additionally, Your Honor, we intercepted a call with

1  Mr. Thomas where he's talking about his recent involvement in a

2  shooting to protect another Vice Lord member from March 23rd,

3  2021.  He's telling Kevin Fordham about how he received this

4  call from a Vice Lord member who said he was in the middle of a

5  shooting and needed assistance.  Thomas said he was going to

6  ride for that Vice Lord member because he was a Vice Lord, and

7  he went out and he engaged in a shooting to protect that Vice

8  Lord member.

9      He has repeatedly shown a willingness to engage in

10  violence, whether it be murder, shootings to protect Vice Lords

11  or at the command of Vice Lord leaders.

12      Additionally, Your Honor, he does have some social media

13  posts as well involving firearms.  In 2018, December 2018 he

14  posted a photo with an assault rifle with a high-capacity drum

15  magazine and a AR-style pistol, and the rifle had a magnified

16  optic laser combination -- combination effects for accuracy,

17  and the caption of this photo was "work work," and this was

18  posted about six months after his involvement in that

19  explosion.

20      He's also posted firearms to Facebook as recently as

21  February of 2021, and he also posted a photo on February 23rd,

22  2021, of himself holding a firearm with two other individuals,

23  and that photo is captioned, "We laying like that.  Brothers,

24  you know, we missing a couple.  You fuck with one, don't think

25  others ain't coming.  Tell you that right now.  You might as

1  well just leave us the fuck alone."

2      Additionally, Your Honor, Mr. Thomas is an armed drug

3  dealer who travels out of state to obtain drugs.  On

4  March 24th, 2021, he discussed selling heroin and arranged for

5  a sale the next day at that Brady location that I mentioned

6  previously.

7      **THE COURT:**  Excuse me, Ms. Asher.  I'm sorry to

8  interrupt you again.

9      Mr. Thomas, I can see you again, and I know that you are

10  disagreeing with what the government is saying, but I'm going

11  to ask you to please keep your emotions more in check --

12  okay -- and just listen; okay?  Okay?  I know you're on mute,

13  but I know you can hear me.  All right?  Your lawyer will have

14  an opportunity to talk on your behalf.  Okay?  Okay.

15      Go ahead, Ms. Asher.

16      **MS. ASHER:**  Thank you, Your Honor.  So as I was

17  saying, on March 24th, 2021, he arranged to sell heroin for the

18  next day at the Brady location that I mentioned, and on

19  March 25th he sold approximately 32 grams.  It was supposed to

20  be heroin, but when it went to the lab, it actually tested

21  positive for fentanyl, which I'm sure, as Your Honor is aware,

22  is an incredibly dangerous substance connected at the center of

23  the opioid epidemic in this country.  And, again, he was saying

24  he was selling heroin, but it tested positive for fentanyl.

25      Additionally, Your Honor, there are calls in March and

1   April where Mr. Thomas continued to discuss selling heroin.  He

2   mentioned that he only had fentanyl at the time, and he needed

3   to go out of state to obtain more heroin.

4       ATF executed both an arrest warrant and two federal search

5   warrants at the two locations associated with Mr. Thomas, the

6   Brady location and the Vaughan location that he wants to return

7   to.

8       At the Vaughan location they seized ammunition, a magazine

9   and a semi-automatic pistol.  That's also the location where

10  Mr. Thomas was arrested.

11      At the Brady location, which was the same location where

12  that drug deal occurred, they seized a biker bus -- a gun box

13  with a firearm receipt and two magazines, paperwork titled

14  National Laws, a shotgun, a bag with drug-packaging material, a

15  9mm firearm, a digital scale, approximately 15.12 grams of

16  suspected drugs, approximately 700 grams of suspected heroin.

17  If that comes back as heroin and not fentanyl, just the heroin

18  alone, that would be enough weight to trigger a five-year

19  mandatory minimum.  Additionally, 800 grams of suspected

20  marijuana and additional ammunition for the 12-gauge shotgun

21  and the 9mm firearm.

22      This was all found upstairs in the Brady location.  Agents

23  have photos of him upstairs in that Brady location, and he also

24  admitted to ATF that he sleeps upstairs at the Brady location

25  and, based on his ping data, he had stayed there the night

1  before the search warrant on June 2nd, 2021.

2      And so ATF found firearms at both homes.  They found at

3  the Brady location drug-packaging materials, a significant

4  amount of suspected heroin, which again this may actually test

5  as fentanyl based on the prior sale where he was selling heroin

6  and it tested as fentanyl, as well as assorted heroin.

7      Turning now to our argument, Your Honor.  As I mentioned

8  at the beginning, there is a statutory presumption for

9  detention, and the defendant must rebut this presumption, but

10  even if he does, it's still a factor for the Court to consider,

11  and the government believes that we have shown by the clear and

12  convincing evidence that there are no conditions or

13  combinations of conditions that will reasonably assure the

14  safety of any person in the community as well as a

15  preponderance of the evidence that there are no conditions or

16  combinations of conditions that will reasonably assure his

17  appearance as required.

18      When we look at the nature and circumstances of this

19  offense, as Your Honor has indicated in prior hearings, we have

20  drug dealing plus gang ties, which is incredibly serious.  But

21  here we have Mr. Thomas, who is the Chief Enforcer for the IVL.

22  He is the right-hand man for Kevin Fordham, and when

23  Kevin Fordham needs muscle, he is the person that he's turning

24  to.  Brandon Thomas is the person that Kevin Fordham is turning

25  to.

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 19

1    We know based on Vice Lord literature that as a Chief

2    Enforcer he is expected to enforce discipline, enforce any

3    commands that are given to him by Vice Lord leaders, and that

4    includes assaults and murders.  He cannot refuse these orders,

5    and based on these conversations that we have intercepted

6    between him and Mr. Fordham, it is clear that he is willing to

7    carry out these orders even when he has no interest, even when

8    he is not involved, even when it's a murder that he doesn't

9    think they have the full evidence.  He is saying,

10   "Kevin Fordham, if you are telling me to do this, I'm going to

11   do it."  He's showing a commitment to the Vice Lord literature

12   and a commitment to Vice Lord leaders to carry out murders on

13   behalf of the gang.

14       There are also significant concerns for witness safety and

15   security.  As Your Honor is aware, Vice Lords kill or attempt

16   to kill members or people who they think might be cooperating

17   with law enforcement, and that was happening before this large

18   indictment.  Brandon Thomas himself has shown a willingness to

19   engage in violence, including murder, at the direction of Vice

20   Lord leaders, and, again, that was when he had no interest in

21   the matter.  So now he's in this huge RICO indictment and so he

22   poses a significant danger to people who are suspected of

23   cooperating with law enforcement.

24       He's also responsible for carrying out these physical

25   beatings, these violations for Vice Lord members, and

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 20

1   Kevin Fordham told Brandon Thomas that there's a reason why he
2   is the Chief Enforcer.  He has a history -- based on that
3   conversation, we can assume he has a history of carrying out
4   these orders, and, while they are talking about this violation,
5   Brandon Thomas is telling Kevin Fordham, "You act like you
6   don't know what I'm doing," again showing that he has a history
7   of carrying out these kinds of violations.
8        Again, he's the person that Kevin Fordham is turning to
9   when he needs muscle, whether that's to murder someone or
10  whether that's just a physical violation to get other Vice
11  Lords in line with Vice Lord law.
12       Your Honor also detained Kevin Fordham yesterday because
13  of his involvement in ordering these types of violent -- or
14  issuing these types of violent orders to gang members, and
15  Your Honor also detained Winisford Watkins, who is a Chief
16  Enforcer underneath Brandon Thomas.  So he is someone who
17  Brandon Thomas could also issue orders to to engage in violence
18  and to carry out discipline, and, again, in both of those cases
19  Pretrial Services recommended detention based on dangerousness
20  for those individuals.
21       Your Honor, there is also the ongoing power struggles
22  where Mr. Thomas was one of the individuals specifically
23  discussed when they are talking about taking out Kevin Fordham
24  and taking out his leadership.  Brandon Thomas is one of the
25  first people that they are saying they need to take care of.

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 21

1  He's directly involved, and there are significant concerns for

2  his retaliation based on this plot to, not only kill someone

3  who is he very close to, Kevin Fordham, but he is also directly

4  named in that as well.

5      And then there is also evidence that he is an armed drug

6  dealer who is selling fentanyl, both knowingly fentanyl, as he

7  admitted, saying that he only had fentanyl and not heroin, but

8  he is also selling heroin and that's testing positive as

9  fentanyl as well, which is incredibly dangerous.

10     Your Honor, we believe that the weight of the evidence as

11 it relates to both dangerousness and risk of flight is very

12 strong for the reasons that I discussed above for the

13 dangerousness, as well as he's facing the ten-year mandatory

14 minimum as charged, and then, based on the additional drugs

15 that may come back, he may be facing additional mandatory

16 minimum charges as well.

17     Your Honor, when we look at his history and

18 characteristics, the best predictor of his future appearance is

19 his past conduct, and he has a decade of failing to appear for

20 court appearances.  He has family ties out of state.  He goes

21 out of the state to obtain drugs, and, based on his ping

22 warrant, we know he was recently out of state in May.

23     He also was untruthful to Pretrial Services about where he

24 was living, again, distancing himself from the 700 grams of

25 suspected heroin, the shotgun, the handgun, the drug-packaging

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 22

 1   materials, the ammunition, and the approximately 800 grams of
 2   suspected marijuana.  I mean he's engaging in all of this
 3   behavior while he's saying he's living with his girl friend,
 4   who has offered to be a third-party custodian, and, again, she
 5   verified that Mr. Thomas was living with her for the past year.
 6   So either she was also being untruthful to Pretrial Services or
 7   she's unaware about where Mr. Thomas is and what he's doing.
 8   She's either, again, untruthful about his drug dealing or she's
 9   unaware of what he's doing, and she's also pregnant.  So she's
10   not a suitable third-party custodian for Mr. Thomas.
11       Additionally, Your Honor, as we stated earlier, his
12   employment history as a security guard, that's consistent with
13   him being in the role of a Chief Enforcer.  That's consistent
14   with the extortion that he was involved with in 2018 where a
15   Vice Lord and a Phantom Motorcycle Club member comes to him and
16   says I think this guy is having an affair with my wife, and
17   what does Mr. Thomas do?  He tries to extort that person for
18   money, for his motorcycle, and he threatens that victim's
19   family.
20       Your Honor, the nature and seriousness of the danger posed
21   to any person in the community is incredibly high.  We have
22   someone who is a Vice Lord member and a Phantom Motorcycle Club
23   member; he has this role as the chief enforcer; he is the
24   right-hand man, the muscle, to Kevin Fordham; and he is also an
25   armed drug supplier of fentanyl and heroin, which makes him

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 23

1　incredibly dangerous, and for those reasons, Your Honor, we are

2　respectfully requesting that the Court detain Mr. Thomas

3　pending trial.  Thank you.

4　　　　　　**THE COURT:**  Thank you, Ms. Asher.

5　　　　Ms. Gracey.

6　　　　　　**MS. GRACEY:**  Yes.  Thank you, Your Honor.

7　　　　First and foremost, Judge, I would ask that the Court look

8　and lean heavily on the recommendation from Pretrial Services.

9　I think that, although the government argues that Pretrial did

10　not have complete information, I would restate knowing that the

11　Court knows that this is not a trial, this is just a hearing as

12　it relates to bond.  So all of the information that the

13　government has provided to the Court, one, counsel has not had

14　an opportunity to view or review to rebut any of that

15　information; and, two, this is not a trial and so all of the

16　things that are stated by the government are just that, mere

17　allegations, which need to be proven in order to accept it as

18　being true.

19　　　　With that being said, Judge, looking at the Pretrial

20　Services report, there are a number of things that I want to

21　bring to the Court's attention.  First, Mr. Thomas is 34 years

22　of age.  He's been a lifelong resident of the State of

23　Michigan.  More importantly, the Detroit area.  So I think

24　that, in terms of his ties to the community, is very

25　significant.

*21-20354; U.S.A. v. D-24 Brandon Thomas*

1    In looking at Mr. Thomas' criminal history or I should say

2 the lack thereof, the government would speak to cases that,

3 quite frankly, even in the report by Pretrial Services

4 indicates that in fact those cases were dismissed.

5    More pointedly, when my client was 26 years of age,

6 according to the Pretrial Services report, the cases that the

7 government mentions I think really only to inflame the Court

8 about criminal sexual conduct, unlawful imprisonment, assault

9 with intent to do great bodily harm less than murder and

10 felonious assault, all of those cases were dismissed, Judge, so

11 holding that against him would be inappropriate.

12    And, looking at the rest of the information supplied by

13 Pretrial Services as it relates to any convictions, I would

14 state to the Court, according to the report, the only

15 conviction that I see on record here is a driving while license

16 suspended, a 93-day misdemeanor, back in 2009.  The rest of the

17 information has no -- it's either been dismissed or there's no

18 record of any type of conviction.

19    If the Court were to agree with the government that

20 Mr. Thomas is this very, very dangerous person, Judge, the last

21 contact that was dismissed was in 2013.

22    I know the government stated, and it's in the report, for

23 some failures to appear.  All misdemeanor cases, Judge.  The

24 last thing that's recorded is November 17 of 2020 while we're

25 during the pandemic so I would ask that the Court take that --

1   and that was for driving while license suspended in the 46th

2   District Court in Southfield, Michigan -- to look at that as it

3   is, Judge.  Most cases -- a number of cases for a number of

4   defendants have either gone in bench warrant status, et cetera,

5   because even the courts were not equipped and prepared for Zoom

6   hearings.  So that is the one -- in October 13th of 2017 is

7   another driving while license suspended, very insignificant.

8       But, more importantly, if the Court were to adopt the

9   argument of the government saying that Mr. Thomas is this, you

10  know, very, very dangerous person, I would submit to the Court

11  where are his convictions?  Where are his convictions for

12  murder and drug dealing and assaultive crimes?  There are none.

13      If he is that -- if the Court adopts or agrees with the

14  argument of the government, if he's that dangerous, if he's

15  done all of these illegal acts, then he should have some

16  convictions.  Where does it state in the report that Mr. Thomas

17  has spent one day in prison?  Zero, none.

18      So I don't know how, that if the Court were to agree with

19  that, how at 34 years of age he could have escaped all of

20  these, not only convictions, but not even crimes that he's been

21  charged with or arrested, drugs, murder, nothing that he has.

22  He has not spent a day in prison.  As a matter of fact, it's

23  not even clear here that he's spent more than a day or so in a

24  county jail for these misdemeanor -- the driving while license

25  suspended.

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 26

1    Judge, he's a family man.  He has seven children.

2    Ms. Erica McElhaney, who is on the call, that I would submit to

3    the Court could be a proper third-party custodian, they have a

4    three-month-old child together.  At the time that he was

5    arrested he was at the Vaughan address.

6        The government would argue, well, he wasn't being

7    truthful, neither was Ms. McElhaney.  I would submit to the

8    Court he was being truthful.  There is nothing illegal, there

9    is nothing wrong with living at one address and perhaps

10   spending the night at another address.  It doesn't mean that

11   you claim that second address as being your residence.  But

12   he's been in this relationship with Ms. McElhaney for over a

13   year, and that's where they are located.

14       In terms of the arrest itself, he was arrested at about

15   6:00 a.m. in bed at the Vaughan address with other --

16   Ms. McElhaney and other minor children that were there, part of

17   that household.

18       He has seven children, Judge.  He does have his own, his

19   own business as well.  Again, a big stretch from saying -- he

20   indicated that he was a security guard -- that all of a sudden

21   the Court is supposed to assume that that is a security guard

22   meaning for an enforcer.  That's a little bit absurd, Judge,

23   and I would ask that the Court disregard that and agree that if

24   he has his own business it does not mean that he is -- that

25   that is an illegal business for the gang.

*21-20354; U.S.A. v. D-24 Brandon Thomas*

1    Also, in looking at the government's argument that at the

2    time that he was arrested that firearms were found, she also

3    indicated that in fact there was a receipt for the firearm.  I

4    would submit to the Court that one of the firearms -- both of

5    the firearms were properly registered, and one of them actually

6    was not only properly registered but belonged to Ms. McElhaney,

7    but it's my understanding that that was seized, and there were

8    no other firearms at the Vaughan address.  Typically if you're

9    doing illegal activity, Judge, you don't have a firearm that

10   you purchase and you have a receipt for.

11   Judge, I know this Court has heard many of these cases,

12   probably is slated to hear, if not all of them, all 40 of them,

13   but a number of them as well.  I would ask the Court not to

14   make this a one size fits all.  It's not a one size fits all.

15   There are 40 defendants at this time in this case, all

16   differing degrees of perhaps culpability, no culpability

17   whatsoever, but trying to make everybody fit into the same is

18   wrong.  I would ask that the Court only consider the

19   information that's contained -- and I'm sure the Court will --

20   as it relates to Mr. Thomas.

21   When looking at not only whether or not the government has

22   met its burden regarding the presumption in this matter, I

23   would state to the Court that it has not.  All of the

24   allegations, again, that the Court has heard, I would ask that

25   the Court weigh that against his criminal history or the lack

1    thereof that he doesn't have.

2         Comparing him, Mr. Thomas to Mr. Fordham or I believe the

3    government had said Mr. Walker, the Court even heard while we

4    were sitting waiting for this case to be called other

5    individuals who had murder convictions and significant

6    convictions and being on pretrial release, also being on

7    supervision.  Mr. Thomas has none of those, absolutely none of

8    those.

9         Looking at all of the factors, Your Honor, I think that

10   the Court should agree with Pretrial Services that there are

11   conditions as it relates to the, the concern that my client

12   would not appear for any future appearances.  I think that

13   conditions can be put in place as indicated by Pretrial

14   Services to assure that Mr. Thomas will appear at any future

15   court appearances.

16        Also, as it relates to the possible dangers to the

17   community, again, look at his history that is before this

18   Court.  Not the allegations that have not been proven, but his

19   history, and I would state to the Court that there can be

20   conditions that could be put in place that will assure, not

21   only his appearance for future court case dates, but also

22   assuring his -- that he's not and will not pose a danger to the

23   community.

24        And also, Judge, as it relates to the third-party

25   custodian, if the Court had questions for Ms. McElhaney, who is

1   on this call as well, she is 33 years of age.  She is gainfully

2   employed as a dialysis technician.  She works for Fresenius

3   Kidney Care.  She has four children, including the one child, a

4   baby, infant, that she shares with Mr. Thomas.  She's been at

5   that address.  She's a responsible individual, and she -- I

6   have already spoken with her, and she would clearly agree to be

7   a third-party custodian in this matter to allow Mr. Thomas to

8   be released on an unsecured bond.

9       I would just respectfully ask -- Mr. Thomas has ties to

10   the community, not only at his church, Vincent Chapel, where

11   he's a drummer there, he also has significant health issues,

12   medical health issues, including asthma -- hold on one second,

13   Judge.  Excuse me.

14       He has asthma.  He has high blood pressure.  Again, we're

15   still going through a pandemic in this regard, and I would

16   respectfully ask the Court to take that into consideration as

17   well.

18       And another significant point that was stated in the

19   Pretrial Services report, Mr. Thomas tested negative for any

20   drugs, any drugs whatsoever, and I think that speaks volumes as

21   well as far as him not doing drugs, not being -- testing

22   positive once he was taken into custody on this case.

23       I just think, Judge, that there are a number of conditions

24   that the Court can fashion to make sure that the Court is

25   satisfied that he does not pose a threat and that in fact he

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 30

1  would appear at any future court appearance.  The Court could

2  order either house arrest or some type of tether situation,

3  and, again, with a third-party custodian I think would be

4  sufficient as well.

5      Judge, I would respectfully ask the Court to follow the

6  recommendation of Pretrial Services, allow for a release of

7  Mr. Thomas so he can effectively fight and defend these charges

8  vigorously while out on bond.  Thank you.

9         **THE COURT:**  Thank you, Ms. Gracey.

10      Ms. Asher, briefly, please.

11         **MS. ASHER:**  Nothing further, Your Honor.  Thank you.

12         **THE COURT:**  All right.  The Court will take a brief

13  recess and come back with its decision.  Thank you.

14      (Recess from 11:59 a.m. to 12:10 p.m.)

15         **THE CLERK:**  We are back on the record for

16  Brandon Thomas.

17         **THE COURT:**  Okay.  Mr. Thomas, when I'm considering

18  the government's request to detain you pending resolution of

19  your case, I'm guided by some principles, and your attorney

20  touched on these, and the first and most important is that you

21  are entitled to the presumption of innocence.  Nothing that

22  took place in this hearing today or that was in the

23  government's proffer or argument or anything that I might say

24  in my findings is intended or should be construed to affect

25  that presumption.  The purpose of today's hearing is to

*21-20354; U.S.A. v. D-24 Brandon Thomas*

1   determine whether or not, notwithstanding the presumption of

2   innocence, you should be detained pending trial in this matter.

3         And also, under the Bail Reform Act, detention is

4   considered an exceptional step.  I'm required to release you

5   unless it is determined that there's no condition or

6   combination of conditions that will reasonably assure your

7   appearance in court or reasonably assure the safety of the

8   community, and the act requires I impose the least-restrictive

9   measures to provide those reasonable assurances.

10        And here the government is seeking to detain you on the

11  grounds that you are a risk of flight or nonappearance, and

12  they must show that by a preponderance of the evidence, and

13  that you're a danger to the community, which they must show by

14  clear and convincing evidence.

15        And, as the government noted, this is a presumption case,

16  which means it carries a presumption of detention because you

17  are charged with a drug-trafficking offense for which the

18  penalty is at least ten years.  Now, that's a presumption, and

19  the presumption can be rebutted, and you just have to provide

20  some evidence to rebut that presumption, and I think the

21  presumption has been rebutted.  I think it's in your lack of

22  significant criminal history, your family ties, your family

23  support, the things that your lawyer talked about today.

24        But I also have to consider some other things.  The nature

25  and circumstances of the offense.  No question these are

1   serious charges, serious allegations of drug trafficking.  As

2   the government put forth in its proffer, you are alleged to

3   have been engaged in some drug trafficking and some very

4   serious controlled substances.  Your gang activity, your

5   leadership role in the gang, your role as an enforcer is very

6   concerning to the Court.  It shows a level of dangerousness in

7   the government's proffer.

8       But I also consider, you know, your history and

9   characteristics.  I do note that you do not have a significant

10  criminal history.  I do note that you have family support.  You

11  have, you know, you have indicated some employment, but I'm

12  not -- that's a little bit questionable.

13      But, overall, I'm looking at everything.  I'm considering

14  the report of Pretrial Services, and, notwithstanding these

15  very serious charges against you and the very serious

16  allegations that were put forth in the government's proffer,

17  which do give the Court concern, I believe I can find

18  conditions and a combination of conditions that will reasonably

19  assure your appearance and reasonably assure the safety of

20  others in the community.  And I'm going to release you on bond,

21  but I'm going to do it with a number of conditions in addition

22  to what's in the Pretrial Services report.

23      So I want you to listen very carefully.  And I see that

24  your girl friend, Ms. McElhaney, is on the call?

25          **MS. GRACEY:**  Yes, Judge, she is.

*21-20354; U.S.A. v. D-24 Brandon Thomas*

1    **THE COURT:**  Okay.  Ms. McElhaney, if you want to put

2  your camera on, I want you to hear these conditions, too.  Good

3  afternoon.

4          **MS. MCELHANEY:**  Good afternoon, Your Honor.

5    **THE COURT:**  Okay.  So, Mr. Thomas, I'm going to

6  release you on a $10,000 unsecured bond, which means you don't

7  have to put any money up front, with these conditions:

8        You are going to report to Pretrial Services as directed.

9        You are going to reside at the Vaughan address with

10  Ms. McElhaney.  Okay?

11        And I'm actually going to put you under what's called home

12  incarceration, which means you need to stay home; okay?  You

13  can only leave -- you have got to get preapproval from Pretrial

14  Services, and that would be for things like court appearances

15  or if you need to meet with your attorney or if there's a

16  medical issue that you have to.  Okay?  So that's going to be

17  home incarceration with the monitoring.

18        So your travel would be restricted to the Eastern District

19  of Michigan, but you're going to be on home incarceration so

20  you're not going to be able to go anywhere.

21        You going to avoid all contact with victims, witnesses,

22  codefendants, anybody that's named in the indictment or

23  identified by name, initial, anything.  No contact.  I know you

24  hear me; okay?

25        You are to participate in a mental health evaluation or

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

Page 34

1   any kind of treatment that Pretrial Services may direct.

2       You are not to have any firearms in the home or other

3   destructive devices, and all of those need to be removed.  I

4   think they were removed even though they were registered

5   apparently to you, Ms. McElhaney.  No guns in the house.  No

6   guns, no guns.

7       You are not to use any controlled substances.  I know you

8   haven't tested for those.

9       And you will have to work with Pretrial Services to

10  resolve all of these outstanding warrants to the extent you'll

11  be able to being under home incarceration.

12      And I'm also going to make Ms. McElhaney your third-party

13  custodian, and what that means, Ms. McElhaney, is you are going

14  to also be responsible to make sure that he complies with all

15  of these conditions, and you are kind of the eyes and ears of

16  the Court; okay?  So you will have to be in contact with

17  Pretrial Services, you know, should he not comply with these

18  conditions.

19      But I think, you know, Mr. Thomas, you know you have every

20  reason in the world to comply with these conditions, don't you?

21  You know what could happen if you don't.  You could face

22  additional charges.  You could have your bond revoked, and you

23  could be detained pending resolution of this case.  So those

24  are all very serious consequences should you not comply with

25  these conditions.

*21-20354; U.S.A. v. D-24 Brandon Thomas*

*Arraignment and Detention Hearing*
*Wednesday, June 9, 2021*

*Page 35*

  1    Do you understand all of those conditions?  Okay.  You can

  2  unmute so I can hear you.  Can you unmute?  I want to hear you.

  3            **THE DEFENDANT:**  Yes, Your Honor.

  4            **THE COURT:**  Okay.  And you agree to abide by those

  5  conditions?

  6            **THE DEFENDANT:**  Yes, Your Honor.

  7            **THE COURT:**  Okay.  I know these are pretty serious

  8  conditions that I'm putting on, but I think that that will

  9  assure your appearance, and it will assure the safety of the

 10  community.

 11    Do we have -- is Ms. Dely here from Pretrial?  I think

 12  she's signing on.  Oh, you're muted.  We can't hear you.

 13            **PRETRIAL SERVICES OFFICER:**  I'm sorry, can you hear

 14  me now?

 15            **THE COURT:**  We can hear you now.

 16            **PRETRIAL SERVICES OFFICER:**  Okay.  Your Honor,

 17  Susan Dely from Pretrial Services.  I just wanted to add that

 18  the location monitoring installation will occur at the

 19  United States Marshals in Detroit, and that should occur within

 20  48 hours.

 21            **THE COURT:**  Yes, that is correct.  It will occur in

 22  Detroit at the courthouse, and you are not to be released from

 23  custody in any location prior to being placed on location

 24  monitoring.  So that means they are going to take you from

 25  Livingston County, and the Marshals are going to take you back

*21-20354; U.S.A. v. D-24 Brandon Thomas*

1   to the Detroit courthouse within 48 hours, and you will have

2   that location monitoring equipment installed at the Detroit

3   courthouse.  Okay?  Okay?

4       And did I cover everything else, Ms. Deli?

5       **PRETRIAL SERVICES OFFICER:**  Just one more,

6   Your Honor, and it's in regards to location monitoring.  If he

7   does gain employment later down the line, that the cost of the

8   location monitoring, he may absorb some of that cost if deemed

9   appropriate.

10       **THE COURT:**  Okay.  We'll add that condition as well.

11      Okay.  With that, I don't have anything further on this

12   matter.

13      I wish you well, Mr. Thomas.

14       **MS. ASHER:**  Your Honor, there would be one additional

15   condition we would request.  Your Honor already said no contact

16   with codefendants, but we would also request no contact with

17   any gang members, including Vice Lord members or Phantom's

18   Motorcycle Club, and we would also request a 24-hour stay of

19   this order to evaluate an appeal to Judge Borman.

20       **THE COURT:**  Okay.  I can add the condition -- or no

21   contact with any gang members, I thought that sort of covered

22   the indictment, but gang members or motorcycle club members.

23   And, as far as a 24-hour stay, I'll give you the 24-hour stay,

24   and they may not even be able to get him to the courthouse.

25   They have 48 hours anyway.  Okay?

1      **MS. ASHER:**  Thank you, Your Honor.  That's all we

2  have.

3      **THE COURT:**  Okay.  Is there anything further from the

4  government?

5      **MS. ASHER:**  No, Your Honor.  Thank you.

6      **THE COURT:**  Okay.  Anything further, Ms. Gracey?

7      **MS. GRACEY:**  No.  Thank you, Your Honor.

8      **THE CLERK:**  Ms. Gracey, I'm going to send you the

9  third-party custodial paper.  If you could have that signed and

10  returned to me along with the signed acknowledgment.

11      **MS. GRACEY:**  The signed acknowledgment of the third

12  party you're talk about?

13      **THE CLERK:**  No, I mean the acknowledgment of

14  Mr. Thomas as well.  We never got a signed acknowledgement.

15      **THE COURT:**  Oh, I have one.  We do have one, Marie.

16      **THE CLERK:**  Oh, did you?  Oh, okay.

17      **THE COURT:**  We do.  I know it gets a little

18  confusing, but we do have one for Mr. Thomas.

19      **THE CLERK:**  Okay.  So just the third party.  I'll

20  email that to you.

21      **MS. GRACEY:**  Okay.  Thank you.

22      **THE COURT:**  All right.

23      **THE CLERK:**  We are off the record for Brandon Thomas.

24      (Proceedings concluded at 12:20 p.m.)

25                    -   -   -

1          **C E R T I F I C A T I O N**

2      I certify that the foregoing is a correct transcription of

3  the record of proceedings in the above-entitled matter.

4

5  s/ Sheri K. Ward                    6/10/2021
   Sheri K. Ward                      Date
6  Official Court Reporter

7                      -   -   -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25